Wesley F. SINE, Trustee, Plaintiff,

v.

THE BANK OF NEW YORK, et al., Defendant.

The Bank of New York, et al., Counter–Claim Plaintiffs,

v.

Wesley F. Sine, Trustee, et al., Counter–Claim Defendants.

No. 3:03 CV 7662.

United States District Court, N.D. Ohio, Western Division.

June 3, 2004.

Donald H. Taube, Wiedemann & Taube, Marion, OH, Larry Heiser, Marion, OH, Ronald C. Barker, Salt Lake City, UT, for Wesley F. Sine, Trustee, Plaintiff.

James B. Hadden, John F. Marsh, Porter Wright Morris & Arthur, Columbus, OH, Paul G. Rozelle, Porter, Wright, Morris & Arthur, Columbus, OH, Christopher Conard, Coolidge, Wall, Womsley & Lombard, Dayton, OH, Nicole M. Ruhenkamp, Cincinnati, OH, for The Bank of New York, Donald Meddles, Trustee/CEO for Delmarva Timber Trust, Delmarva Timber Trust, dba Polly & Co., Fahey Bank, Polly & Company, J.P. Morgan Chase, John Doe 1–10, Holders of additional funds possibly subject to dispute, Defendants.

Michael C. Cottrell, Erie, PA, Pro se.

## ORDER

CARR, District Judge.

This is a declaratory judgment action initially filed by plaintiff Wesley F. Sine, Trustee for judgment creditors of the Delmarva Timber Trust ("Delmarva"), in the Marion County, Ohio Court of Common Pleas. The defendant Bank of New York ("Bank") removed the case to this court and filed a counter-claim against Sine and Donald Meddles. Thereafter the Bank sought and was granted temporary restraining orders requiring Sine, *inter alia*, to refrain from attempting to obtain or transferring certain assets belonging to the Bank, remit certain assets belonging to the Bank to an escrow account, and provide certain information to facilitate further proceedings in this case.

On February 13, 2004, the Bank file a show cause motion, alleging that Sine had breached the restraining orders. Following a hearing on that motion, Sine was held to be in criminal contempt for non-compliance with the orders. As a sanction, his complaint was dismissed and judgment was entered against him on the Bank's counterclaim. Leave was, as well, granted to the Bank to seek an award of attorneys' fees and costs.

The Bank has filed a request for an award of fee and costs in the amount of $220,478.39. Sine opposes the request, arguing, *inter alia*, that it is substantially inflated as a result of the participation of an excessive number of attorneys, performance of unnecessary activities, includes charges for services and expenses not related to the show cause hearing, it fails to specify the billing rates, and is otherwise inadequate. The Bank has filed a detailed response to those contentions.

In general, Sine's opposition downplays significantly the consequences of his contempt, and the burden that discovery of his misconduct imposed on the Bank once his actions were discovered, particularly in the overall context of this litigation.

That context has been described in earlier orders, and will be summarize only briefly here. In general, based on the record currently before the Court, it appears that the President of Delmarva, Donald Meddles, aided and abetted by Sine, has been engaged in an effort to obtain assets belonging to the Bank and other financial institutions through a series of fraudulent schemes. The primary *modus operandi* involves representations to the target institutions that assets held by the targets in various nominee names belong to entities bearing confusingly similar names to those of the true nominees in whose names the assets were placed with the target institutions, rather than to the true nominees.

As a result of such representations, Meddles, with Sine acting as a middleman, obtained possession of about $100,000 in assets belonging to the Bank. The restraining orders sought to stop the flow of funds belonging to the Bank to Meddles via Sine. In addition, the restraining orders sought to facilitate retrieval of the funds already obtained by Meddles and Sine by having them placed in escrow.

In mid-February, 2004, the Bank became aware that the spigot had not been turned off, and, indeed, the flow appeared to be accelerating and increasing in volume. Of greatest significance was Sine's acquisition of a mortgage bond in the amount of $5.9 million. During the hearing on the contempt motion, it became apparent that Sine, contrary to the advice of at least one of the attorneys who were advising him on the issue, Sine had transferred that instrument to Meddles.

Confronted with what it believed to be a blatant violation of this Court's restraining orders, and understandably uncertain of

the dimensions of such violation and the risks from apparent continued misconduct to its assets, the Bank and its counsel responded vigorously.

The request for an award of fees and expenses reflects the vigor of that response. Contrary to Sine's contentions, I conclude, after a review of the time sheets in light of his objections, that those objections are not well-taken.

The objections fall into several general categories: 1) the bill accounts for activities not reasonably related to the show cause hearing and sanction imposed on Sine; 2) too much time was expended for a particular task; 3) too many lawyers worked on a particular task, or conferred unnecessarily about a particular matter, event, or development; 4) work was done on something that need not have been done; 5) it is not appropriate to charge for travel time; and 6) the statements are insufficiently specific.

■ Sine contends that much of the time was unrelated to Sine or the show cause hearing, and related, instead, either to Meddles or Delmarva or the preliminary injunction hearing. This contention ignores the uncertainty that existed in mid-February, and continued until the hearing, and the entanglement of his actions with those of Meddles.

At the hearing, it became apparent that Sine was a middleman, who received assets from the target institutions. He forwarded them to Meddles. This was not, however, so readily apparent prior to the hearing. All the bank knew was that assets appeared to be continuing to flow from the target institutions to Sine. Given the well-founded concern that Sine was violating this court's orders, and continuing to place at risk substantial assets belonging to the Bank, the time spent by the Bank was not unreasonable.

The Bank's counsel represents, and I find no basis for disagreeing with his representation, that it has restricted its request for an award of fees to activities directly related to Sine and the show cause motion and hearing. I find Sine's first set of objections to be without merit.

I decline to second-guess either the amount of time expended or numbers of attorneys who worked on specific tasks. To the extent that the Bank's attorneys viewed themselves as responding to an emergency, where the stakes were very high, that view was reasonable.

I likewise disagree with Sine's contention that some of the work need not have been done, and thus should not have been billed to the client or charged to him. Here, again, I will not undertake to second-guess the Bank's counsel, whose pleadings and presentations before, during, and after the show cause hearing were entirely appropriate to what was at issue and at stake. I found, and continue to find, nothing excessive in those pleadings and presentations. That observation supports my view, based on my familiarity with the proceedings and review of the times sheets in light of Sine's objections, that the number of attorneys involved, time expended, and tasks performed were reasonable under the circumstances.

■ The Bank is entitled to be reimbursed for its attorneys' travel time. Given the complexity of the issues and the risks to the Bank, it was justified in employing out-of-town counsel. Those attorneys, in turn, are entitled to be compensated for the time spent getting to and from Toledo, and the expenses incurred in their travels.

■ Finally, I reject the contention that the time sheets are not sufficiently specific. They provide ample information to enable review of the reasonableness of the attorneys' activities and their expenditure of time. I likewise find that the hourly

billing rates reasonably reflect the skill and experience of the attorneys· working on.the show cause proceeding.

In light of the foregoing, I find that the attorneys' fees are reasonable, as was the time spent in the tasks confronting the attorneys. I also find that the time for which compensation is sought from Sine was properly spent on tasks related to uncovering and prosecuting his acts in violation of this court's orders, and not on tasks unrelated to him or the show·cause proceedings.

.It is, therefore,

ORDERED THAT the application of the Bank of New York for an award of attorneys' fees and costs against the plaintiff Wesley F. Sine be, and the same hereby is, granted; fees and costs in the amount of $220,478.39 are awarded as requested.

So ordered.